## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| DELLWAYNE PRICE, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.: 5:22-cv-00303-MTT-CHW** |
| | : | |
| Warden TAMARSHE SMITH, *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Plaintiff Dellwayne Price, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement in Macon State Prison. (Doc. 1). Defendants have filed a motion to dismiss citing Plaintiff's failure to exhaust. Plaintiff did not directly respond to the motion. Because Plaintiff failed to exhaust his available remedies before bringing this action, it is **RECOMMENDED** that Defendant's motion (Doc. 12) be **GRANTED** and that Plaintiff's claims against Defendant be **DISMISSED without prejudice.**

Plaintiff has also filed a document titled "Settlement" (Doc. 34), in which he "move[s] the Court for a settlement" and requests $550,000,000 in compensatory damages, $550,000,000 in punitive damages, and $30,000 in attorney's fees. That motion requests relief that the Court is not authorized to grant and is hereby **DENIED**.

## BACKGROUND

Plaintiff brought this action on September 7, 2022, alleging that Defendants' deliberate indifference to his safety led to Plaintiff being stabbed by another inmate on May 24, 2022, at Macon State Prison (MSP). (Doc. 1). The inmate had been moved to Plaintiff's cell about a week

earlier, on May 18, 2022. (*Id.*) Following screening of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims to proceed against all Defendants. (Doc. 7). Defendants filed a pre-answer motion to dismiss arguing that Plaintiff failed to exhaust the administrative remedies available to him. (Doc. 12). The Court gave Plaintiff notice of the motion to dismiss and ordered him to respond. (Doc. 13). Since Defendants filed their motion to dismiss, Plaintiff has filed six motions requesting appointed counsel (Docs. 16, 18, 20, 22, 27, 30), a motion for default judgment (Doc. 26), memorandum of law to the court (Doc. 31), and a motion for settlement (Doc. 34). The memorandum of law to the court might be construed as Plaintiff's response to Defendants' motion to dismiss, but that memo does not rebut Defendant's exhaustion argument and only asks that "the Court not consider this 'extrinsic evidence'…." (Doc. 31).

<u>The Exhaustion Requirement</u>

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and

if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. …Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1082-83 (internal citations omitted).

Grievance Procedure

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02. (Doc. 12-2, Attachment A). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id*. at 8).[1] Prisoners may file outside of the 10-day window if they show good cause. (*Id*.). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id*. at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id*. at 11). On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days. (*Id*. at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id*. at 15).

**ANALYSIS**

Defendants move to dismiss Plaintiff's complaint under the PLRA's exhaustion

---

[1] The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

3

requirement. (Doc. 12). They argue that because Plaintiff did not file a grievance about the incident underlying his claims, he failed to exhaust his available administrative remedies. (*Id*.) The record supports that Plaintiff failed to exhaust as required. Therefore, Defendants motion to dismiss should be granted.

Determining whether dismissal is appropriate requires applying the test outlined in *Turner* to see if Plaintiff failed to exhaust the administrative remedies available to him. In first considering whether dismissal for failure to exhaust is appropriate under *Turner*'s step one, a court must first consider all the alleged facts construed in favor of Plaintiff when the facts conflict. Plaintiff alleges that he filed a grievance regarding the matters in his complaint. (Docs. 1, p. 4). Therefore, when the pleadings are construed in Plaintiff's favor, his claims survive under step one of *Turner*. Under step two of *Turner*, however, the record shows that Plaintiff failed to exhaust his administrative remedies prior to filing suit.

Under *Turner*'s second step, any disputed facts must be examined to determine if Plaintiff exhausted the available administrative remedies prior to filing suit. In support of their motion to dismiss for failure to exhaust, Defendants provided copies of two of Plaintiff's grievances, the applicable grievance policy, and a declaration from Curtis Jefferies, who is the chief counselor at MSP. (Doc. 12-2). Plaintiff's grievance history log shows that he filed multiple grievances at MSP. (*Id*., p. 26). The two grievances specifically referenced in the motion are the grievances filed chronologically before and after the alleged stabbing incident.

In Grievance No. 338692, filed on May 3, 2022, before the incident at issue in this case, Plaintiff claims he was attacked by an inmate from behind while Plaintiff was restrained and was being escorted to the shower, and contends that staff members did nothing to prevent it. (Doc. 12-

2, p. 27). The staff members denied that Plaintiff was attacked, and the grievance was denied on July 6, 2022. (*Id*. p. 35). Plaintiff did not appeal. *See* (*id*., p. 26).

The next grievance, Grievance No. 341937, was filed on August 8, 2022, more than two months after the alleged May 24, 2022 stabbing incident. (Doc. 12-2, p. 36-37). In this grievance, Plaintiff contends that officers used force against Plaintiff on August 5, 2022, when Plaintiff refused to remove his arm from the tray flap while protesting the denial of his request for shower supplies. (*Id.*, p. 36-37, 47). The grievance was denied on September 9, 2022, and Plaintiff acknowledged the denial on September 15, 2022. (*Id*., p. 47). Plaintiff did not appeal. *See* (*id*. at 26).

The PLRA requires exhaustion prior to filing suit. 42 U.S.C. § 1997e(a). Plaintiff's complaint serves as the marker for whether he properly exhausted his available administrative remedies as required. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). Proper exhaustion means completing the grievance process, from filing a grievance to receiving a decision on appeal, pursuant to the applicable grievance policy. *Woodford*, 548 U.S. at 88. Defendants show that Plaintiff did not file any grievance about the decision to place the inmate in Plaintiff's cell on May 18, 2022, or the alleged stabbing from May 24, 2022.

The crux of Plaintiff's suit is that Defendants knew about the risks that other inmates posed to his safety but ignored this risk when they assigned him a cellmate. Therefore, Plaintiff might also have filed a grievance about threats to his safety or failure to protect him, even if he did not file a grievance about this particular incident. *Toenninges v. Ga. Dept. of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015) (explaining "[t]he critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally"); *see also, e.g.*, *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215 (11th Cir. 2010)

5

(explaining that the plaintiff need not have filed a grievance each time he was denied a medical consultation) (citing *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) (discussing that a prisoner who was assaulted daily need not file a grievance after each assault while he remained unprotected)).

A review of Plaintiff's grievance history confirms that Plaintiff did not file any grievance about the alleged stabbing incident or about concerns for his safety leading up to the incident. Defendants have provided a printout of Plaintiff's grievance history between April 2018 and August 2022 (Doc. 12-2, p. 26), but only the two grievances described above have been specifically provided, leaving the Court to examine the record further to determine whether Plaintiff has exhausted or not. Even though Defendants have only provided those two grievances, their position that Plaintiff failed to exhaust is supported by other portions of the record in this case and in another one of Plaintiff's cases. Plaintiff's grievance history lists a grievance from April 11, 2022, Grievance No. 337615, which was labeled "staff negligence." (Doc. 12-2, p. 26). While Defendants did not provide that grievance in this case, a copy of the grievance appears in one of Plaintiff's many other lawsuits. In Grievance No. 337615, Plaintiff complained that he was attacked by two inmates and prison staff did nothing to stop the attack or provide medical care for injuries. (Doc. 10-2, p. 26 from *Price v. Dugger*, 5:22-cv-299-MTT-TQL (M.D. Ga. May 30, 2023)). The grievance was denied in July 2022, and Plaintiff did not appeal. *See* (Doc. 12-2, p. 26). This grievance arguably could have placed Defendants on notice that other inmates created safety concerns for Plaintiff, but Plaintiff did not fully appeal the grievance. Therefore, it cannot serve to show that Plaintiff exhausted his administrative remedies for this case.

Two grievances, categorized as "Policy/Procedural Challenge[s]," appear on Plaintiff's grievance history and were fully appealed before Plaintiff commenced this action: Grievance No.

329805 from September 27, 2021, and Grievance No. 332010 from November 16, 2021. While Defendants did not provide or discuss these grievances, Defendants' supporting materials suggest that no grievance surrounding the issues in this suit was filed. (Doc. 12-2). Furthermore, although Plaintiff did not respond to Defendants' exhaustion argument, his complaint states that the grievance that he allegedly filed concerning this suit went unanswered and, thereby, unappealed. (Doc. 1). Plaintiff's admission in his complaint that he never received an answer to his grievance bolsters Defendants' argument that no grievance, including these fully appealed grievances, related to Plaintiff's complaint.

Prison staff, especially Defendant Smith, appear to have been aware of Plaintiff's safety concerns as evidenced by letters attached to Plaintiff's complaint. (Docs. 1-4, 1-5, 1-6, 1-7). Nevertheless, the record does not indicate that Plaintiff ever filed or fully appealed a grievance regarding his safety concerns. Complaints to an outside party, as the letters indicate, do not satisfy the exhaustion requirement. *See, e.g, Kozuh v. Nichols*, 185 F. App'x 874 (11th Cir. 2006) (dismissing for failure to exhaust where plaintiff filed numerous complaints to outside parties but did not utilize the grievance process). Defendants' potential awareness of Plaintiff's safety concerns are not dispositive at this stage. Instead, the record must show that Plaintiff filed a grievance about the issues relating to his case and fully appealed those grievances before commencing suit. The record in this case instead supports Defendants' argument that Plaintiff did not exhaust. Therefore, Defendant's motion should be granted.

## CONCLUSION

It is **RECOMMENDED** that Defendants' motions to dismiss (Doc. 12) be **GRANTED** and that Plaintiff's case be **DISMISSED** without prejudice. Plaintiff's motion for a settlement (Doc. 34) is **DENIED**.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4.  The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 18th day of July, 2023.

s/ Charles H. Weigle                    
Charles H. Weigle
United States Magistrate Judge